UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABRAHAM MORIS SIMON MARCOS,

Petitioner,

v.

TODD BLANCHE, *et al.*,

Respondents.

Case No. C26-3932-MLP

ORDER

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas petition, raising various challenges to both his October 6, 2026, redetention, as well as his ongoing detention. (*See* dkt. # 1.) He seeks release from custody and injunctive relief related to his future redetention and potential third-country removal. (*Id.* at 23.) Respondents filed a return to the petition (dkt. # 5), together with supporting declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Matthew Smith (dkt. # 6 ("Smith Decl.")), and their counsel Peter Clark (dkt. # 7 ("Clark Decl.")). Petitioner filed a traverse in reply. (Dkt. # 8.)

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1) for the reasons set forth herein.[1]

## I. BACKGROUND

Petitioner is a Guatemalan citizen who first entered the United States in 1997 when he was twenty years old. (Dkt. # 1 at 6.) He was apprehended and allowed to voluntarily return to Mexico. (*Id.*) Shortly after his return to Mexico, Petitioner reentered the United States without inspection and lived in Washington State for approximately three years. (*Id.*) He was eventually apprehended and served with a Notice to Appear ("NTA") on June 6, 2000, which charged him with inadmissibility under the Immigration and Nationality Act ("INA"). (Smith Decl., ¶ 5.) An immigration judge ordered him removed on July 19, 2000, and he was removed to Guatemala on September 13, 2000. (*Id.* ¶¶ 6-7; *see* Clark Decl., ¶ 2, Ex. 1 (removal order).)

In 2019, Petitioner and his family fled Guatemala to the United States after he was attacked by men who were stealing water from his community. (Dkt. # 1 at 6.) On April 6, 2019, he and his son were apprehended by Customs and Border Protection ("CBP"). (*Id.*) He expressed a fear of returning to Guatemala. (*Id.*) On April 9, 2019, CBP served Petitioner with a Notice of Intent/Decision to Reinstate Prior Order. (Smith Decl., ¶ 9; *see* Clark Decl., ¶ 2, Ex. 2 at 2 (notice).) *See also* 8 C.F.R. § 1241.8(b).

Petitioner was not removed to Guatemala pursuant to the reinstated removal order. Instead, on April 10, 2019, ICE released Petitioner into the United States on an Order of Supervision ("OSUP"), which required his compliance with certain conditions of release. (*Id.*; *see* Clark Decl., ¶ 2, Ex. 5 at 2 (OSUP).)

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

Petitioner thereafter settled in the Bremerton area with his wife and three of his children. (Dkt. # 1 at 7.) Petitioner's youngest child is a U.S. citizen. (*Id.*) Petitioner asserts he has attended all his required ICE check-in appointments, has complied with the conditions of his release, and has no criminal history. (*Id.*)

On October 6, 2026, ICE arrested Petitioner after he checked in for a pre-scheduled appointment, accompanied by his immigration attorney. (Dkt. # 1 at 7.) Petitioner asserts he was not informed of the basis for his arrest or redetention except being told that his OSUP was revoked because he was "a reinstate." (*Id.* at 7-8.) Petitioner's attorney was not permitted to remain with Petitioner after he was arrested. (*Id.*) Petitioner was taken to another room, where Officer Smith asserts ICE conducted an informal interview and afforded him an opportunity to respond. (*Id.* at 8; Smith Decl., ¶ 11.)

Contemporaneous DHS administrative records indicate ICE officers took him into custody after "[r]ecord checks indicated that [Petitioner] is subject to a final order of removal and was previously removed from the United States." (Clark Decl., ¶ 2, Ex. 6 at 3.) The records further state, "Due to [Petitioner] having a reasonable-fear claim and a pending asylum application, Seattle ERO officers took him into custody to facilitate the appropriate interview and further immigration processing." (*Id.*) The records do not allege Petitioner violated his OSUP or indicate that ICE had the ability or means to effectuate Petitioner's 2000 reinstated order of removal to Guatemala. (*See generally id.*) A Notice of Revocation of Release, signed by Assistant Field Office Director Allison Williams at 7:38 PM the evening of October 6, 2026 states, "Your release has been revoked pursuant to 8 C.F.R. § 241.4(l) for the following reason(s): It is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal." (Clark Decl., ¶ 2, Ex. 7 at 2.) The "Proof of Service"

form attached to the notice is incomplete, as it is missing the name, title, and signature of the serving officer, as well as the time of service. (*Id.* at 3.)

Officer Smith asserts that Petitioner is awaiting a reasonable fear interview, but "ERO believes it will be able to remove Petitioner to Guatemala as soon as any withholding only proceedings are complete." (Smith Decl., ¶¶ 12-13.) Officer Smith does not explain why an interview had not been scheduled, when it was likely to be scheduled, or why Petitioner is to remain detained while he awaits that process.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner raises four claims. First, he asserts that his detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001) because it is not significantly likely that he will be removed in the reasonably foreseeable future. (Dkt. # 1 at 8-11, 19.) Next, he asserts that his arrest and redetention on October 6, 2026, without first receiving notice and an opportunity to be heard, violated his procedural due process rights under the Fifth Amendment when assessed under the three-part test in *Mathews v. Eldridge*, 424 U.S. 319, 333-34 (1976). (*Id.* at 11-14, 20-21.) Finally, he contends that Respondents failed to comply with applicable regulations when

they revoked his OSUP ("Ground Three"), which was a violation of the Administrative Procedure Act ("APA") ("Ground Four"). (*Id*. at 16-17, 21-22.)

In response, Respondents assert ICE lawfully detained Petitioner "to facilitate his removal from the United States." (Dkt. # 5 at 1.) Respondents further contend that Petitioner's detention complied with due process because his OSUP was revoked pursuant to regulation and because he was provided notice and an opportunity to be heard upon revocation. (*Id.*)

### A. *Mathews* and Procedural Due Process

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews,* 424 U.S. at 332. In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

As to the first factor, Petitioner had a liberty interest in remaining free, the deprivation of which was entitled to due process. *Zadvydas*, 533 U.S. at 690; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). This favors Petitioner.

As for the second factor, the inconsistent and unsupported justifications for Petitioner's redetention shows there was a high risk of error and value in additional procedural safeguards. Respondents argue in their return that ICE revoked Petitioner's OSUP after officers determined he could be "removed expeditiously and [so] that his reasonable fear process could be expedited." (Dkt. # 5 at 9.) However, as noted, DHS records indicate officers took him into custody "to facilitate" his asylum interview and "further immigration proceedings." (Clark Decl., ¶ 2, Ex. 6 at 3.) Nothing within those records indicates Petitioner's redetention was motivated by an increased likelihood of removal.

Governing federal regulations allow DHS to revoke an OSUP if a petitioner violates conditions of release, 8 C.F.R. § 241.13(i)(1), or if "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Here, there is no evidence Petitioner violated conditions of his OSUP. Nor is there evidence of changed circumstances that would support Respondents' claim that Petitioner could be removed "expeditiously." First, DHS already determined in 2019 that Petitioner's removal was not significantly likely to occur. And nothing in the current record shows ICE is any closer to effectuating Petitioner's removal than it was in 2019. For example, Respondents do not mention possessing a travel document to Guatemala, scheduling a flight for Petitioner, or confirming Petitioner's acceptance by Guatemalan officials. And as for "facilitating" Petitioner's relief interview, that is not a lawful basis for revoking Petitioner's OSUP permitted by the regulations. If anything, it only serves to undermine the suggestion that removal is likely because DHS will not remove Petitioner until relief proceedings are complete. (*See* Smith Decl., ¶ 13.) *See also* 8 C.F.R. § 208.5(a) (prohibiting a noncitizen's removal "before a decision is rendered on his or her asylum

application”). Pre-deprivation notice of Petitioner’s revocation, and a hearing at which he could challenge the bases for his redetention, and dispute the decision to keep him detained, would have been valuable in preventing an erroneous deprivation of liberty. This factor favors Petitioner, as well.

As for the last *Mathews* factor—the governmental interest—Respondents articulate an interest in preventing noncitizens from “remaining in the United States in violation of our law” and an interest in enforcing compliance with its orders of release and returning individuals to custody who violate their terms.” (Dkt. # 5 at 10 (quoted source omitted).) Respondents further assert that the second interest is “especially the case when such violations involve putting public safety at risk—such as the case with Petitioner’s long history of repeated criminal activity.” (*Id.*)

However, nothing within the evidentiary record shows Petitioner has violated the law beyond lacking lawful status—a fact they knew when they permitted his release into the United States in 2019. Further, ICE has not alleged Petitioner to have violated conditions of an “order of release” or indicated they detained him to enforce compliance with such. Rather, Petitioner was subject to, and complied with, an *order of supervision* for the preceding seven years leading up to his arrest which, again, was to “facilitate the [asylum] interview and [for] further immigration processing.” (Clark Decl., ¶ 2, Ex. 6 at 3.) As for the suggestion that Petitioner’s “violations” or “long history of repeated criminal activity” put the public’s safety at risk, those claims are entirely unsupported by the record and disproved by DHS’s own administrative records which explicitly acknowledge Petitioner has no criminal history. (*See id* (“No criminal history was found.”).)

Civil immigration proceedings are assumed to be “nonpunitive in purpose and effect”, *Zadvydas*, 533 U.S. at 690, and the two regulatory purposes advanced by civil detention are the

mitigation of risk of flight or danger to the community—neither of which are implicated on this record. *Id.* Unsurprisingly then, neither of those goals were advanced by redetaining Petitioner on August 6, 2026 without notice and an opportunity to be heard on his objections, nor keeping him detained while he awaits a fear interview that has yet to be scheduled. Because there was no legitimate governmental interest furthered by forgoing pre-deprivation process, the final factor also weighs in Petitioner's favor.

In sum, the *Mathews* test favor Petitioner and habeas relief is therefore warranted. Given Petitioner's liberty interest at stake, the high risk of erroneous deprivation, and the identified governmental interests, providing no pre-deprivation process was constitutionally deficient. Release is the appropriate and constitutionally required remedy. *See Aucatoma v. Hernandez*, 2026 WL 1265541, at *8 (W.D. Wash. May 8, 2026) (and the cases cited therein).

**B. Remaining Claims and Injunctive Relief**

Having found that Petitioner is entitled to release from custody under *Mathews* and procedural due process, the Court need not reach Petitioner's remaining claims as the relief would be duplicative. Therefore, Petitioner's indefinite detention, APA, and substantive due process claims are denied as moot.

Petitioner also seeks injunctive relief enjoining the government from redetaining him in the future without first satisfying certain conditions, as well as enjoining the government from removing him to a third country. (Dkt. # 1 at 23.) Petitioner does not develop a sufficient factual record to support finding he faces a risk of irreparable harm from future redetention or third-country removal. His requests for permanent injunctive relief are accordingly denied without prejudice.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part. Respondents shall RELEASE Petitioner from immigration detention within **twenty-four (24) hour**s, subject to his most recent pre-detention OSUP.

(2) Respondents shall file a status report with the Court confirming Petitioner's release within **two (2) business days**.

(3) Petitioner's remaining claims are DENIED as moot.

(4) Petitioner's requests for injunctive relief are DENIED.

(5) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are strongly encouraged to meet and confer prior to the filing of any motion.

Dated this 13th day of November, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge